

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-12-00430-CR

Charles **ARRINGTON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2011CR1663
Honorable Sharon MacRae, Judge Presiding[1]

Opinion by:   Sandee Bryan Marion, Justice
Concurring Opinion by:  Luz Elena D. Chapa, Justice

Sitting:        Sandee Bryan Marion, Justice
                Marialyn Barnard, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  August 14, 2013

REVERSED AND REMANDED

A jury convicted Charles Lavoy Arrington, appellant, of five counts of aggravated sexual assault

of a child and one count of indecency with a child by sexual contact.  The jury sentenced appellant to

sixty years' confinement on each count of aggravated sexual assault of a child and to twenty years'

confinement on the one count of indecency with a child, all sentences running concurrently.

---

[1] Sitting by assignment.

Appellant asserts five issues on appeal: (1) the trial court committed jury charge error by failing to give a unanimity instruction as to each separate criminal incident alleged at trial, as charged in each separate count/offense in the indictment; (2) the trial court's jury charge error egregiously harmed him; (3) alternatively, the trial court's jury charge error rendered his trial fundamentally unfair, in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution; (4) his trial counsel rendered ineffective assistance of counsel by failing to object to the State's elicitation of expert witness testimony about the truthfulness of the complainant's sexual misconduct accusations; and (5) his trial counsel rendered ineffective assistance of counsel by failing to object to the State's elicitation of lay witness testimony about the truthfulness of the complainant's allegations. We reverse and remand.

## BACKGROUND

The complainant in this case is appellant's daughter, H.A., who was nine years old at the time of the alleged abuse. Appellant and H.A.'s mother were separated. After the separation, appellant went to live at his mother's house. H.A. alleged the first incident of abuse occurred while she was visiting her father at appellant's mother's residence. H.A. testified she, appellant, and her brother were all in appellant's room on his bed. She testified that while her brother was playing Xbox at the edge of the bed, appellant "stuck his hands down [her] pants." H.A. stated he "rubbed" her "vagina and [her] butt." H.A. did not tell her mother, but testified she told her friends at school.

H.A. testified the second incident of abuse occurred over spring break while H.A. was in the third grade. H.A. and her younger brother went to stay with their father and his girlfriend, Tracey. H.A. testified to three separate incidents of sexual abuse that occurred at appellant and Tracey's house. The first, she testified, occurred in the shower after Tracey had left for work and after her brother fell asleep. H.A. testified appellant told her to go get in the shower. While H.A. was in the shower, appellant turned the light off and got in the shower with her. H.A. testified to oral-penile penetration, oral-vaginal

contact, and sexual contact when appellant touched her breasts, vagina, and her "butt," and when appellant made her touch him inappropriately. This is referred to as the "first shower."

The third incident was the "second shower," which H.A. testified occurred the day after the first shower incident. During the second shower, H.A. testified to penile-vaginal penetration, penile-anal penetration, penile-oral penetration, digital-anal penetration, and digital-vaginal touching/penetration.

The fourth incident about which H.A. testified occurred the day after the second shower incident while she, her brother, and appellant were on a mattress in the living room. H.A. testified when her brother fell asleep appellant moved him to a couch and then engaged in sexual contact with her. H.A. testified that penile-oral penetration, digital-vaginal touching, sexual contact when appellant touched her breasts, vagina, and her "butt," digital-anal penetration, penile-anal penetration, and penile-vaginal penetration occurred during this incident.

H.A. stated she told her friends about the incidents that occurred over spring break. After rumors circulated at her elementary school, a counselor approached H.A. and H.A. told her what had occurred.[2] Appellant was charged with seven counts of aggravated sexual assault: Count I (Penile-Vaginal Penetration), Count II (Penile-Anal Penetration), Count III (Oral-Vaginal Contact), Count IV (Penile-Oral Penetration), Count V (Digital-Vaginal Penetration), and Count VII (Digital-Anal Penetration). He was also charged with Count VI, indecency with a child by sexual contact. Count III was subsequently dropped after the trial court declared a mistrial on that count. The jury charge contained no instruction telling the jury they had to be unanimous on which separate criminal act they believed constituted the specific offense of aggravated sexual assault.

---

[2] The school counselor approached H.A. twice about rumors that were circulating at her elementary school that she was pregnant. The first time, H.A. told the counselor it was a joke and her friends made her do it. The second time, H.A. told the counselor about the sexual abuse.

## JURY CHARGE ERROR

Appellant argues the lack of a unanimity instruction in the jury charge was error. The State concedes that error occurred. The Texas Constitution and the Texas Code of Criminal Procedure require that a jury verdict in felony cases be unanimous. TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. ANN. art. 36.29(a) (West 2006). A jury must reach a unanimous verdict about the specific crime that the defendant committed. *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011). The jury must "agree upon a single and discrete incident that would constitute the commission of the offense alleged." *Id*. (quoting *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007). "[N]on-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions." *Id*. at 772. When each of the multiple incidents would individually establish a different offense, the situation requires that the "charge, to ensure unanimity, would need to instruct the jury that its verdict must be unanimous as to a single offense or unit of prosecution among those presented." *Id*. "[G]uaranteeing unanimity is ultimately the responsibility of the trial judge because the judge must instruct the jury on the law applicable to the case." *Id*. at 776. "The trial judge is therefore obligated to submit a charge that does not allow for the possibility of a non-unanimous verdict." *Id*.

In a case with very similar facts to the instant case, *Cosio*, the defendant was charged with two counts of aggravated sexual assault and two counts of indecency with a child. *Id*. at 770. Evidence was presented of more than one instance supporting each count and there was no unanimity instruction instructing the jury that it had to be unanimous about which instance constituted the commission of the offenses for purposes of each of the individual counts. *Id*. The Court of Criminal Appeals concluded there was error and held the charges in *Cosio* allowed for the possibility that the jury rendered non-unanimous verdicts. *Id*. at 774. The Court noted, "[t]he jury could have relied on separate incidents of criminal conduct, which constituted different offenses or separate units of prosecution, committed by

Cosio to find him guilty in the . . . counts." *Id.* (citation omitted); *see Francis v. State*, 36 S.W.3d 121, 125 (Tex. Crim. App. 2000) (concluding there was error in failing to include a unanimity instruction and noting, "it is possible that six members of the jury convicted appellant on the breast-touching offense (while the other six believed he was innocent of the breast-touching) and six members convicted appellant on the genital-touching offense (while the other six believed he was innocent of the genital-touching)").

Likewise, here, the State presented testimony of separate incidents, occurring on different days, as evidence of the counts as charged. The jury charge in appellant's case did not contain a unanimity instruction and evidence was presented of multiple offenses for each count. For instance, the application paragraph for Count I (penile-vaginal penetration) stated:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 26th Day of March, 2010, in Bexar County, the defendant, Charles Arrington, did intentionally or knowingly cause the penetration of the female sexual organ of [H.A.], a child who was younger than 14 years, by Charles Arrington's male sexual organ, then you will find the defendant guilty of aggravated sexual assault of a child as charged in Count I of the indictment.

H.A.'s testimony presented evidence of two separate criminal acts that could constitute this offense—the second shower incident and the next day on a mattress in the living room—and no unanimity instruction was given. This same pattern occurred on all counts:

> Count II (penile-anal penetration)—alleged that appellant committed aggravated sexual assault by penetrating H.A.'s anus with his penis on or about March 26, 2010. Evidence of two different incidents supported this offense—the second shower and the next day on a mattress in the living room.

> Count III (oral-vaginal contact)—alleged that appellant committed aggravated sexual assault by causing H.A.'s vagina to contact his mouth on or about March 26, 2010. Evidence of only one incident was presented at trial—the first shower.[3]

> Count IV (penile-oral penetration)—alleged that appellant committed aggravated sexual assault by penetrating H.A.'s mouth with his penis on or about March 26, 2010.

---

[3] The jury was unable to reach a verdict on Count III (oral-vaginal contact) and the trial court declared a mistrial on that count.

Evidence of three different incidents supported this offense—the first shower, the second shower, and the mattress/living room incident.

Count V (digital-vaginal penetration)—alleged that appellant committed aggravated sexual assault by penetrating H.A.'s vagina with his finger on or about March 26, 2010. Evidence of two different incidents supported this offense—the second shower and the mattress/living room incident.

Count VI (indecency with a child by sexual contact)—alleged that appellant committed indecency with a child by sexual contact by causing H.A. to touch his genitals. Evidence of multiple incidents supported this offense, some of which may have been subsumed into the aggravated sexual assault offenses.[4]

Count VII (digital-anal penetration)—alleged that appellant committed aggravated sexual assault by penetrating H.A.'s anus with his finger on or about March 26, 2010. Evidence of two different incidents supported this offense—the second shower and the mattress/living room incident.

Because evidence of multiple instances of criminal acts constituting the offenses was presented at trial, an instruction on juror unanimity as to the incidents was required. *Cosio*, 353 S.W.3d at 772. Therefore, we conclude, and the State concedes, it was error not to include an instruction paragraph instructing the jury on unanimity of the acts that constituted the offenses.

**HARM**

Appellant asserts he was egregiously harmed by the lack of a unanimity instruction in the jury charge.

Appellant's trial counsel did not object to the failure to include the unanimity instruction. When a defendant does not object, a constitutional jury-charge issue is not preserved. *Id.* at 776; *Phillips v. State*, 193 S.W.3d 904, 913–14 (Tex. Crim. App. 2006). However, "charge error is never forfeitable by a defendant's failure to object at trial." *Cosio*, 353 S.W.3d at 776. Instead, a failure to object controls only the type of harm analysis that will be applied. *Id.* When a defendant does not object to the charge error, his convictions are subject to reversal on appeal only if he has suffered "egregious harm."

---

[4] *See Evans v. State*, 299 S.W.3d 138, 143 (Tex. Crim. App. 2009) (holding indecency with a child by contact was a lesser included offense of aggravated sexual assault when both offenses are predicated on the same act).

*Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). Egregious harm is established if the record shows that the appellant has suffered "such harm that [his] trial was not fair or impartial." *Id*.; *see Cosio*, 353 S.W.3d at 776–77. Charge error is egregiously harmful when it affects "the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Fulcher v. State*, 274 S.W.3d 713, 716 (Tex. App.—San Antonio 2008, pet. ref'd). "An egregious harm determination must be based on a finding of actual rather than theoretical harm." *Cosio*, 353 S.W.3d at 777. However, "we do not require direct evidence of harm to establish egregious harm." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

We consider the following factors in evaluating harm: (1) the entire jury charge; (2) the state of the evidence, including contested issues and the weight of probative evidence; (3) the parties' arguments at voir dire and at trial; and (4) all other relevant information in the record. *Almanza*, 686 S.W.2d at 171. The *Almanza* analysis is fact specific and is done on a "case-by-case basis*." Gelinas v. State*, 3989 S.W.3d 703, 710 (Tex. Crim. App. 2013).

## A. The Entire Jury Charge

There was no unanimity instruction. The only mention of the word "unanimous" in the entire charge was the following "boilerplate" language regarding selection of the jury foreman:

> After you have retired to your jury room, you should select one of your members as your "foreperson." It is his or her duty to preside at your deliberations, vote with you and, when you have unanimously agreed upon a verdict, to certify to your verdict by signing the same as "foreperson."

The charge, thus, "permitted non-unanimous verdicts based on the evidence presented in the case." *Cosio*, 353 S.W.3d at 777. The error did not affect only one count, but instead affected all counts upon which appellant was convicted. Therefore, this factor weighs in favor of finding egregious harm.

## B. The State of the Evidence

### 1. Lack of medical evidence

There was no medical evidence in this case. H.A. testified the incidents of sexual abuse occurred in late March and the SANE exam was not conducted on her until late May. Therefore, there was no DNA evidence or any other forensic evidence at the time the exam was performed. The SANE medical exam performed on H.A. revealed no evidence of sexual abuse consistent with H.A.'s testimony. However, the SANE nurse who conducted the exam testified there often is no evidence after a certain amount of time has passed and the lack of evidence does not necessarily contradict H.A.'s story. In any case, the lack of medical evidence resulted in essentially a "he said, she said" between H.A. and appellant.

### 2. Evidence that H.A. denied any sexual misconduct when first confronted

Lisa McGinnis, the school counselor, testified she first confronted H.A. after rumors circulated that H.A. was pregnant. Initially, H.A. did not indicate any misconduct by appellant instead saying it was all a misunderstanding and "she was just talking about, basically, where babies come from and her friends had misunderstood her." Two days later on the last day of school, McGinnis approached H.A. again when rumors continued to circulate. McGinnis testified that now the rumor was not only that H.A. was pregnant, but that she thought it might be her father's baby. McGinnis called H.A. back to her office and at that time H.A. "became tearful and she told [McGinnis] that her father had touched her inappropriately."

### 3. State's elicitation of "expert testimony" on H.A.'s truthfulness

The State asked the school counselor, McGinnis, her opinion on the truthfulness of H.A.'s accusations and the State concedes that McGinnis answered direct questions on H.A.'s credibility and truthfulness. Appellant asserts McGinnis was portrayed as an "outcry/expert witness," and, as such, her opinion on truthfulness was not admissible. We agree. Expert testimony that a particular witness is

truthful is inadmissible under Rule 702.  *Yount v. State*, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993).

When taking the stand, the State questioned her about her qualifications:

> Q:    And so how long have you worked as a school counselor?
> A:    I've been a school counselor for 11 years.
> Q:    And how long have you worked in school administration.
> A:    Twenty-one years.
> Q:    Now, what age groups have you worked with?
> A:    Mostly elementary school but the last two years I worked with middle schools anywhere from five to 15.
> Q:    Now, what kind of education do you have?
> A:    I have a [sic] early childhood education degree, a bachelor's.  I have a master's in counseling and then a Ph.D. in counseling and supervision and I'm a licensed professional counselor outside of my school counseling certification.

The State then asked her about H.A.'s credibility:

> Q:    What did — **what details did you see that lent credibility to her story that made you know that she was telling you the truth**?
> A:    I felt that she was telling me the truth based on the fact that she had details, for example, what movie they were watching; that her brother was playing PlayStation when it happened when she was nine; that she could very much put herself in the situation of what was going on exactly at that time.
>       Those were the things that made me feel like she was telling the truth.
> Q:    Okay.  Now, what told you that those were the important factors?
> A:    Based on my experience that I've had with other students, based on my educational experience.  Those were the things that I fell back on.
> Q:    **So you were trained to look for these signs**?
> A:    **As a counselor, yes**.

We believe this testimony essentially amounted to an expert opinion that H.A.'s accusation against the appellant was the truth, which is inadmissible and had the effect of "bolstering" H.A.'s testimony.  *See Yount*, 872 S.W.2d at 711.  Appellant's trial counsel did not object to McGinnis's testimony.[5]

## 4.   State's elicitation of testimony from H.A.'s mother about H.A.'s truthfulness

The State also asked H.A.'s mother questions about H.A.'s truthfulness.  The credibility of a witness may be supported by evidence in the form of opinion, but the evidence may only refer to

---

[5] This is the basis for appellant's fourth issue.  He asserts his trial counsel rendered ineffective assistance of counsel by failing to object to the State's elicitation of expert witness testimony about the truthfulness of the complainant's sexual misconduct accusations.

character for truthfulness and evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked. TEX. R. EVID. 608. Appellant argues he did not "open the door" by attacking H.A.'s credibility, so as to allow H.A.'s mother to provide her opinion on H.A.'s truthfulness. The State asked H.A.'s mother the following:

> Q:     And has she, I guess, changed from her initial reaction of talking about what happened?
> A:     You mean — not really, no. You mean, like personality?
> Q:     Yes. I mean, is she still fearful and embarrassed when she talks about it?
> A:     No but we don't really talk about it all that much but I ask her questions and **she's very honest with her answer and she's not — she doesn't hide the answers. She tells the truth.**
> . . .
> Q:     You didn't think this could happen to your daughter?
> A:     Yes.
> Q:     Did you talk to [H.A.] about the fact that police were going to be involved and she was going to have to —
> A:     Yes.
> Q:     — follow through with that?
> A:     Yes.
> Q:     **Did you ask [H.A.] if she was telling the truth**?
> A:     **Yes**.
> Q:     **And what did she say to you**?
> A:     **She said yes and she started crying**.

Appellant's counsel did not object.[6]

### 5.  State's impeachment of H.A.

McGinnis testified that the first time she approached H.A. about rumors she was pregnant H.A. told her it was a misunderstanding and denied any sexual abuse had occurred. Appellant argued this impeached H.A.'s testimony, discrediting her. McGinnis testified:

> Q:     Okay. So you called her into your office and what happened?
> A:     I spoke to her. I told her that we had heard this rumor. I asked her about it. She said, no, it was a misunderstanding that she was just talking about, basically, where babies come from and her friends had misunderstood her and at that point I believed her.

---

[6] This is the basis for appellant's fifth issue. He asserts his trial counsel rendered ineffective assistance of counsel by failing to object to the State's elicitation of testimony from H.A.'s mother about the truthfulness of the complainant's sexual misconduct accusations.

H.A. also testified:

> Q: Was [McGinnis] the first person that you told about what happened?
> A: First — whenever I first talked to her, she asked me why I was telling everyone that I was pregnant.
> Q: Uh-huh.
> A: And I told her that it was a just a joke and it was all made up.
> Q: Okay. So you told Ms. McGinnis that you were just joking around?
> A: Yeah.

H.A. also told her mother the rumors were a "joke":

> Q: Do you know if [McGinnis] talked to your parents?
> A: She had told my parents that I had been telling rumors that I was pregnant.
> Q: Okay. And did you talk to you mom, Jenny?
> A: No. She just asked me why and I just said that it was just a joke that my friend made me do.
> Q: Okay. Now, why would you lie to your mom at that point?
> A: I was like super scared that someone can hurt me and come find me.

H.A. testified that she lied to McGinnis and her mother because she was scared her dad could hurt her if she told anyone. H.A. also testified that she told her mother the rumors were a joke and her friends made her do it, but stated she said that because she was "super scared that someone can hurt me and come find me."

Given that the opinions on H.A.'s truthfulness went without objection in a case where it was essentially appellant's word against H.A.'s (there were no witnesses and no DNA/medical evidence), we believe the state of the evidence factor weighs slightly in favor of finding egregious harm when, as here, there was no unanimity instruction and the question of whether appellant committed any of the acts is obviously the contested issue at trial.

## C. The Parties' Arguments

Neither the defense nor the State mentioned unanimity at any time during voir dire or closing arguments. Appellant argues that the following statement from the State "misled the jury into believing that it could convict, even if it was not unanimous:"

> He didn't have to be thinking about that before she came over for that visit. He could have developed that the first time he had her in that bed or the first time he had her in that shower. It could have popped into his brain and he could have acted on it. It could be an impulse but as long as he did it and he intended to do it he did it and it satisfies this charge.

This statement referred to intent, not unanimity. In the immediately preceding paragraph the State discussed the intent element of the offenses and argued "[i]ntent can be spontaneous" and does not have to be premeditated. Therefore, we do not believe the above statement had anything to do with unanimity.

In *Ngo v. State*, the Court of Criminal Appeals found egregious harm when the jury charge did not contain a unanimity instruction and the jury was repeatedly told it need not return a unanimous verdict. 175 S.W.3d 738, 752 (Tex. Crim. App. 2005). The Court stated, "this is an instance in which the original jury charge error was not corrected or ameliorated in another portion of the charge; instead, it was compounded by the one misleading statement concerning unanimity that was set out in the jury charge, as well as by the affirmative statements of both the trial judge and the prosecutor that the jury could return a non-unanimous verdict." *Id.* Although in the instant case the arguments did not "compound" the error as they did in *Ngo*, there was no mention at all of the unanimity requirement. Therefore, although the charge error was not "compounded," it was not "corrected or ameliorated" either. *Id.*; *see Ruiz v. State*, 272 S.W.3d 819, 825 (Tex. App.—Austin 2008, no pet.) (finding no egregious harm when failure to include unanimity instruction was ameliorated when State said, "The jury does not have to find all four of these ways [alleged in the first count] to find the defendant guilty. But it is sufficient if all of you agree that one or more of these ways have been proved."); *Martinez v. State*, 190 S.W.3d 254, 260, 262 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (finding no egregious harm when unanimity charge error was "ameliorated" during voir dire when the State told jury it must be unanimous in deciding which act constituted the offense). However, because there was no affirmative statement "compounding" the charge error, this factor does not weigh in favor of finding

egregious harm. *See Cosio*, 353 S.W.3d at 777 (noting neither the parties nor the trial court added to charge error by telling jury it did not have to be unanimous, therefore, this factor did not weigh in favor of finding egregious harm).

## D. Other Relevant Information in the Record

Here, the jury found appellant guilty of all counts, with the exception of Count III on which a mistrial was declared after the jury failed to reach a verdict. Count III alleged appellant committed aggravated sexual assault by causing his mouth to contact H.A.'s vagina. At trial, H.A. testified this occurred once:

> Q: Did he ever touch his mouth to your middle or your girl parts or your vagina?
> A: Yes.
> Q: When did he do that?
> A: In the shower the first time.
> Q: In the shower the first time?
> A: Yes.

Of all the counts alleged, Count III was the only count on which evidence of only one incident was presented that would constitute the offense—the first shower. Coincidentally, Count III was the only count the jury was unable to reach a verdict on. The record demonstrates the following occurred when the jury entered its verdict:

> Q: All right. Mr. Foreman, I have gotten your note. Aside from Count Number III, are the verdicts that you have arrived at unanimous?
> A: Yes, ma'am, they are.
> Q: All right. So based on your note that you cannot arrive at a verdict on Count III, despite very diligent efforts, I know that you have put in, then I'm going to declare a mistrial on Count III and receive the verdicts on the balance of the counts.

The trial court proceeded to read the jury's verdict of guilty on all remaining counts. We believe this information in the record is relevant and weighs in favor of finding egregious harm because the jury found appellant guilty of all counts on which evidence of multiple instances constituting the offense was presented, but was unable to reach a verdict on the one count that only one instance constituting the offense was presented.

### E. Conclusion on Harm Analysis

In *Cosio*, the Corpus Christi Court of Appeals concluded there was egregious harm and reversed appellant's convictions when the jury charge did not contain a unanimity instruction and evidence of several instances constituting the offenses alleged were presented at trial. *Cosio v. State*, 318 S.W.3d 917 (Tex. App.—Corpus Christi 2010), *rev'd*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011). The Court of Criminal Appeals reversed the court of appeals, concluding there was no egregious harm and affirming Cosio's convictions. *Cosio*, 353 S.W.3d at 778. However, we find this case distinguishable from *Cosio*.

First, the complainant's testimony in this case was impeached and the complainant's in *Cosio* was not. *See id*. at 777. The *Cosio* Court noted, "[the complainant]'s testimony detailed each of the four incidents and the various separate instances of criminal conduct involved in each incident. Her testimony was not impeached." We interpret this to mean the complainant's credibility in *Cosio* was not called into question or discredited. *See* BLACK'S LAW DICTIONARY 768 (8th ed. 2004) (defining "impeach" as "[to] discredit the veracity of"). Here, H.A's credibility was called into doubt when McGinnis testified that H.A. denied any sexual abuse by appellant the first time McGinnis confronted her, and on direct examination when the State asked H.A. why she had "lied" to her mother about why rumors were spreading at school that she was pregnant. Therefore, H.A.'s credibility was discredited, or "impeached," where the complainant's in *Cosio* was not.

Second, in this case there were two incidents of inadmissible "bolstering" of H.A.'s testimony—once when the State elicited opinions on H.A.'s truthfulness from her mother and, even more damaging, when the State portrayed McGinnis as an expert and elicited an inadmissible expert opinion from her on H.A.'s truthfulness.

Third, the *Cosio* Court noted that the "jury charges . . . generally instructed the jury, *at the end of each charge*, that its verdicts must be unanimous." *Id*. at 770 (emphasis added). Here, as mentioned

- 14 -

above, there was only one paragraph in the entire jury charge that had anything to do with unanimity and it was only "boilerplate" language regarding selection of the jury foreman.

Fourth, the Court, in *Cosio*, stated that because Cosio's defense was that he did not commit any of the offenses (as opposed to he committed one, but not the other), his defense was "essentially the same character and strength across the board" and because the jury found him guilty of all counts it is logical to assume the jury found him unanimously guilty of *all* separate instances of criminal conduct and was not persuaded he did not commit any of the offenses. *Id*. at 777–78. The Court stated, "[o]n this record, therefore, it is logical to suppose that the jury unanimously agreed that Cosio committed all of the separate instances." *Id*. at 778. The Court concluded that it was, therefore, "highly likely" that the jury's verdicts were unanimous and, accordingly, "actual harm [had] not been shown." *Id*. Here, the State argues that appellant likewise has not shown harm because his defense, like Cosio's, was that he did not commit any of the offenses. However, in the instant case we do not have the same situation. While it is true that appellant's defense was the same as Cosio's (he did not commit any of the offenses), the jury did not find appellant guilty of all counts like it did in *Cosio*, but instead was unable to reach a verdict on the only count that evidence of only one incident constituting the offense was alleged. The trial court, accordingly, declared a mistrial and entered a "judgment of acquittal by jury" on Count III. On this record, therefore, we find the facts distinguishable from *Cosio* as it is not "highly likely" the jury's verdicts were unanimous where the jury was in fact not unanimous and was unable to reach a verdict on the one count (Count III) that evidence of only one criminal act constituting the offense was alleged. Because the jury could not find appellant guilty on Count III based on only one criminal act, we cannot conclude it was likely the jury was unanimous on the other counts that alleged multiple criminal acts. We believe this demonstrates "actual harm."

**CONCLUSION**

A criminal defendant is entitled, under both the Texas Constitution and the Texas Code of Criminal Procedure to a unanimous jury verdict in felony cases. TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. art. 36.29(a); *Cosio*, 353 S.W.3d at 771. In this case, the State concedes the lack of a unanimity instruction in the jury charge was error. Based on this record, we conclude appellant was deprived of a fair trial by the trial court's failure to include a unanimity instruction and, thus, was egregiously harmed.[7] Accordingly, we reverse the trial court's judgment of conviction and remand the case for further proceedings.

Sandee Bryan Marion, Justice

Publish

---

[7] We decline to address appellant's remaining issues as they are not dispositive to this appeal. TEX. R. APP. P. 47.1