

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00303-CR

Fredys Antonio **VARELA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2012CR3463
Honorable Melisa Skinner, Judge Presiding

Opinion by:   Sandee Bryan Marion, Justice

Sitting:      Catherine Stone, Chief Justice
              Sandee Bryan Marion, Justice
              Rebeca C. Martinez, Justice

Delivered and Filed:  April 16, 2014

AFFIRMED

A jury found appellant, Fredys Antonio Varela, guilty on three counts of aggravated sexual assault of a child and five counts of indecency with a child by contact.  In five issues on appeal, appellant asserts (1) the trial court erred in denying his motion to suppress, (2) he was denied his right to counsel of choice, and (3) the trial court erred by commenting on the weight of the evidence.  We affirm.

**BACKGROUND**

Late one evening, appellant called his church pastor, Carlos Castan, crying and mentioning suicide. Castan realized appellant was emotionally upset and invited him to his house to talk. During their conversation, appellant told Castan he was sexually abusing his eight-year-old son, J.C. After speaking with appellant for several hours, the two agreed on a plan to have J.C.'s aunt take care of him for the immediate future and for appellant to meet with Castan and a senior pastor two days later.

When the three met, Castan informed the senior pastor of appellant's admissions. When confronted by the senior pastor, appellant confirmed the admissions were true and the senior pastor called the police. Officer Arthur Knox and Officer Roger Rodriguez responded to the call. When they arrived, they found appellant crying on the floor of the senior pastor's office. Castan informed the officers that appellant spoke only Spanish. Although Officer Rodriguez spoke Spanish, Officer Knox did not. The senior pastor and Castan explained the situation to the officers. While appellant was speaking with Castan and the senior pastor, Officer Rodriguez overheard appellant admit to sexually assaulting his son.

After speaking with the pastors, Officer Knox contacted Detective Robert Valadez of the San Antonio Police Department Special Victims Unit. Detective Valadez instructed the officers not to question appellant, but to instead ask whether appellant was willing to voluntarily go to the police station to provide a statement. The officers informed Castan of Detective Valadez's request, which Castan translated for appellant. Appellant agreed he would voluntarily speak to the police at the police station.

Officer Rodriguez drove appellant to the police station and escorted him to an interview room. Officer Knox picked up J.C. from school and they also went to the police station. Detective Valadez first interviewed J.C., who confirmed appellant sexually assaulted him. J.C. also provided

additional details about the sexual assault that appellant had yet to give. After concluding his interview with J.C., Detective Valadez interviewed appellant. Both an audio and video recording of the interview was made. Although the recording is in Spanish, a transcription and translation of the interview were also admitted. The video shows prior to conducting the interview, Detective Valadez read appellant *Miranda* warnings. Detective Valadez testified he did so because appellant arrived at the police station in a patrol vehicle rather than his personal vehicle.

During the interview, appellant made several incriminating statements regarding sexually assaulting J.C. At the conclusion of the interview, appellant was allowed to leave the interview room and meet with a Child Protective Services representative in the lobby of the Special Victims Unit. Subsequently, Detective Valadez obtained a warrant and appellant was arrested. The jury convicted appellant on all eight counts.

## MOTION TO SUPPRESS

Appellant filed a pre-trial motion to suppress the statements he made to Detective Valadez arguing he was in "custody" for purposes of *Miranda*. In his first issue, appellant asserts the trial court erred in denying his motion to suppress because the trial court erred in finding he was not subjected to custodial interrogation when he made the incriminating statements to Detective Valadez. In issues two and three, appellant asserts that because he was subjected to custodial interrogation (1) the statements he made violated his right to counsel under the Fifth and Fourteenth Amendments to the United States Constitution, and (2) he did not knowingly, intelligently, and voluntarily waive his right to counsel as required by article 38.22 of the Texas Code of Criminal Procedure. The State argues at the time the statements were made, appellant was not the subject of a custodial interrogation. We agree with the State.

**1. Standard of Review**

A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). The trial court is the sole trier of fact and judge of the weight and credibility of the evidence. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). "The appellate court must apply a bifurcated standard of review, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but applying a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations." *Martinez*, 348 S.W.3d at 922–23. We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007).

Generally, we are restricted to a review of the record as it existed at the time of the suppression hearing. *Black v. State*, 362 S.W.3d 626, 635 (Tex. Crim. App. 2012); *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996). However, when the State, as here, raises the suppression issues at trial "either without objection or with subsequent participation in the inquiry by the defense," we may consider the record in its entirety. *Black*, 362 S.W.3d at 635; *Turrubiate v. State*, 415 S.W.3d 433, 437 (Tex. App.—San Antonio 2013, pet. ref'd).

**2. Custodial Interrogation**

In *Miranda v. Arizona*, the United States Supreme Court established warnings to safeguard a person's constitutional privilege against self-incrimination during custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 442–57 (1966). *Miranda* warnings are required before statements made during custodial interrogation may be admitted as evidence in a defendant's trial. *Id.* at 444–45; *see also* TEX. CODE CRIM. PRO. art. 38.22 (West 2005) (requiring similar warnings). However, the State is only required to show compliance with *Miranda*, or the warnings required

- 4 -

by article 38.22, when a defendant establishes the statements he seeks to suppress were the product of custodial interrogation. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007); *see also Rodriguez v. State*, 939 S.W.2d 211, 215 (Tex. App.—Austin 1997, no pet.) ("*Miranda* and article 38.22 apply only to statements made as a result of custodial interrogation. They are not applicable to statements resulting from noncustodial interrogation.").

Custodial interrogation is questioning by law enforcement officers after a person has been taken into custody or deprived of his freedom of action in any significant way. *Miranda*, 384 U.S. at 444; *Herrera*, 241 S.W.3d at 525. A person is in custody if, under the circumstances, "a reasonable person would believe that his freedom of movement was restrained to the degree associated with formal arrest." *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing *Stansbury v. California*, 511 U.S. 318, 322 (1994)).

We apply a two-step analysis to determine whether an individual is in custody. *Martinez v. State*, 131 S.W.3d 22, 32 (Tex. App.—San Antonio 2003, no pet.). First, we examine all the objective circumstances on an ad hoc basis to determine whether a person is in custody. *Id*. Such circumstances include "the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Howes v. Fields*, 132 S. Ct. 1181, 1189 (2012) (internal citations omitted). Given those circumstances, we then consider whether a reasonable person would have felt he was not at liberty to terminate the interview and leave. *Martinez*, 131 S.W.3d at 32. The record as a whole must "clearly establish" the defendant's statement was the product of custodial interrogation. *Herrera*, 241 S.W.3d at 526. The defendant bears the burden to prove a statement was the product of custodial interrogation. *Gardner v. State*, 306 S.W.3d 274, 294 (Tex. Crim. App. 2009). The ultimate inquiry is simply whether there was a formal arrest or

restraint on freedom of movement of the degree associated with formal arrest. *Estrada v. State*, 313 S.W.3d 274, 294 (Tex. Crim. App. 2010).

During appellant's motion to suppress hearing, the trial court heard testimony from Officer Knox, Officer Rodriguez, and Detective Valadez. Detective Valadez testified he instructed the responding officers not to question appellant, but to instead ask whether appellant would be willing to voluntarily travel to the police station to provide a statement. Both Officer Rodriguez and Officer Knox testified appellant voluntarily accompanied Officer Rodriguez to the police station and was placed in the backseat of the patrol car without handcuffs. Officer Rodriguez also testified appellant was not handcuffed or restrained when he escorted him to the interview room, nor was he restrained while he was in the interview room. The video recording confirms appellant was not restrained, had water, and had access to his cell phone while in the interview room.

Although appellant and Castan did not testify during the suppression hearing, they later testified during trial. Castan testified appellant admitted to sexually assaulting J.C., and confirmed appellant voluntarily agreed to go to the police station to provide a statement. However, Castan contradicted the officers' testimony that appellant was not handcuffed when he was placed in the back of the patrol car. During appellant's testimony, he refuted Officer Rodriguez, Officer Knox, Detective Valadez, and Castan's testimony that he voluntarily chose to go to the police station to provide a statement. However, appellant conceded he was not under arrest during the interview. He also denied admitting to sexually assaulting his son to Castan, the senior pastor, and Detective Valadez, arguing he was recalling abuse he suffered as a young child.

On appeal, appellant contends because he previously admitted to committing a crime, the interview with Detective Valadez was "designed to elicit a confession to a crime they already believed that appellant had committed." As a result, appellant argues the interview with Detective Valadez constituted custodial interrogation and appellant could therefore avail himself of the

*Miranda* safeguards. However, neither being the focus of a criminal investigation nor being questioned at a police station, without more, necessarily equates to custodial interrogation. *See Oregon v. Mathiason*, 429 U.S. 492, 495–96 (1977); *Martinez*, 131 S.W.3d at 33. When the circumstances show that a person is acting only upon the invitation, request, or even urging of law enforcement, and there are no threats, either express or implied, that he will be taken forcibly, the accompaniment is voluntary, and such person is not in custody. *Dancy v. State*, 728 S.W.2d 772, 778–79 (Tex. Crim. App. 1987); *Martinez*, 131 S.W.3d at 32. Consequently, the fact appellant may have been the subject of a criminal investigation did not convert his voluntary interview into custodial interrogation.

Appellant also contends the fact Detective Valadez chose to read him *Miranda* warnings is further evidence he was subjected to custodial interrogation. However, Detective Valadez testified he read the *Miranda* warnings "in case anything was ever raised as to [the voluntariness of appellant's presence,]" or simply as a precautionary measure. Mere recitation of *Miranda* warnings is more indicative of proper cautiousness than it is of the officer's intent to arrest. *See Dancy*, 728 S.W.2d at 777; *Bates v. State*, 15 S.W.3d 155, 159 (Tex. App.—Texarkana 2000, pet. ref'd). Thus, Detective Valadez's reading of *Miranda* warnings did not transform his subsequent questions into custodial interrogation.

All of the testimony given at the suppression hearing, as well as Castan's testimony during trial, indicates appellant voluntarily went to the police station to provide a statement. There was no evidence of express or implied threats that appellant would be forcefully taken to the police station if he chose not to voluntarily provide a statement. Although appellant's testimony regarding the voluntariness of his presence at the police station contradicted the testimony of the other witnesses, as the sole trier of fact and judge of the weight and credibility to give witness testimony, the trial court was free to believe or disbelieve any part of the testimony as it saw fit.

Reviewing all the circumstances surrounding appellant's interview, we conclude the record supports the trial court's determination that appellant was not in "custody" when he made the complained of statements to Detective Valadez. Consequently, neither *Miranda* nor article 38.22 prohibits the admission of appellant's statements to police. Accordingly, the trial court did not abuse its discretion in denying appellant's motion to suppress.

## SIXTH AMENDMENT RIGHT TO COUNSEL OF CHOICE

In his fourth issue, appellant asserts he was denied his Sixth Amendment right to counsel of choice. Specifically, appellant argues the trial court erred by denying his motion for continuance on the opening day of trial so that he could hire an attorney to replace appointed counsel.

The constitutional right to the assistance of counsel includes the right to obtain that assistance from retained counsel of one's choosing. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006); *Gonzalez v. State*, 117 S.W.3d 831, 836–37 (Tex. Crim. App. 2003). However, the right to counsel of choice is not absolute. A trial court has wide latitude in balancing the right to counsel of choice against the needs of fairness and the demands of its calendar. *Gonzalez-Lopez*, 548 U.S. at 151–52. "Trial judges necessarily require a great deal of latitude in scheduling trials. . . . Consequently, broad discretion must be granted [to] trial court[s] on matters of continuances; only an [unreasonable] and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

A defendant's right to select his own counsel cannot be manipulated so as to obstruct orderly court procedure or to interfere with the fair administration of justice. *Webb v. State*, 533 S.W.2d 780, 784 (Tex. Crim. App. 1976). A defendant may not wait until the day of trial to demand different counsel or to request that counsel be dismissed so that he may retain other counsel. *Id*. When competent counsel is available and fully prepared to represent the defendant,

a trial court does not abuse its discretion by denying an untimely request for continuance based on the unavailability of the defendant's counsel of choice. *Slappy*, 461 U.S. at 12–13.

In this case, appellant waited until the day of trial to request a continuance in order to hire a new attorney. His appointed counsel was present and fully prepared for trial. Appellant does not allege his appointed counsel rendered ineffective assistance, and he offers no reason why the trial court should have delayed his trial so he could retain a different lawyer. Accordingly, we conclude the trial court did not violate appellant's constitutional right to counsel by refusing his untimely request for a continuance for the purpose of retaining new counsel.

## COMMENT ON THE WEIGHT OF EVIDENCE

In his fifth issue, appellant asserts the trial court improperly commented on the weight of evidence in the jury charge. Specifically, appellant complains of the emphasized language in the following portion of the jury charge:

> To ensure that the jury, the court and the parties are all receiving the same testimony, whenever a party or a witness does not speak English, the services of an interpreter are employed. *The interpreters used by the court are highly competent, and are well versed in the idioms of both languages; you may place your complete confidence in them.*

> You are further instructed that you as the jury are to base your deliberations on the interpretations as they came from the interpreters in the English language.

(emphasis added).

On appeal, appellant asserts the State relied heavily on his statements to the police. Appellant argues that because the instruction vouched for the credibility of the interpreter, the instruction was an improper comment on the weight of the evidence. Assuming, without deciding, that the jury charge constituted error, we nonetheless conclude appellant was not harmed.

A trial court is required to give the jury a written charge "setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the

testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." TEX. CODE CRIM. PRO. ANN. art. 36.14 (West 2007). A trial court is prohibited from making a statement that comments on the weight of the evidence in the jury charge. *See id.*

Because appellant did not object at trial, we review to determine whether appellant suffered egregious harm. *See Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). Egregious harm deprives a defendant of a fair and impartial trial. *Arrington v. State*, 413 S.W.3d 106, 112 (Tex. App.—San Antonio 2013, no pet.). Errors that result in egregious harm are those that affect "the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory." *Id.* (internal quotations omitted). "[O]ne of our considerations in the determination of egregious harm is whether the error related to a 'contested issue.'" *Hutch v. State*, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996) (quoting *Kucha v. State*, 686 S.W.2d 154, 156 (Tex. Crim. App. 1985)). In examining the record for egregious harm, a reviewing court should consider (1) the entire jury charge, (2) the state of the evidence, including contested issues and the weight of probative evidence, (3) the final arguments of the parties, and (4) any other relevant information revealed by the record of the trial as a whole. *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008).

The jury charge in this case correctly set out the statutory definitions of aggravated sexual assault of a child and indecency with a child by contact. The jury charge did not emphasize the complained of instruction, and the instruction is found only once within the twenty-seven page jury charge. No other portion of the jury charge impacts or references the alleged error.

Both defense counsel and the State made closing arguments. However, neither defense counsel nor the State mentioned the instruction or the competency of the interpreter during closing arguments.

The State also introduced extensive evidence in this case. J.C. testified appellant sexually assaulted him on numerous occasions. The probative value of J.C.'s testimony alone, which has no relation to the alleged jury charge error, would have been sufficient to support a conviction. *See Ruiz v. State*, 891 S.W.2d 302, 304 (Tex. App.—San Antonio 1994, pet. ref'd) (testimony of victim alone sufficient to support sexual assault conviction). In addition to J.C.'s testimony, Castan, Officer Rodriguez, and Detective Valadez also testified to appellant's admissions of sexually assaulting J.C. The evidence also included the video recording of Detective Valadez's interview with appellant and the transcription and translation of the interview. At no time during the trial were the credentials of the interpreter or the accuracy of the translation contested issues. Appellant's defensive theory was simply that he did not commit the complained of acts against J.C., arguing he was recalling the sexual abuse he suffered as a young child himself.

Based on our review of the entire record, we do not believe the alleged error affected the very basis of the case, deprived appellant of a valuable right, or vitally affected his defensive theory. Nor do we believe appellant was deprived of a fair and impartial trial. Accordingly, we conclude appellant was not egregiously harmed.

## CONCLUSION

We conclude the trial court did not err in denying appellant's motion to suppress, appellant's right to counsel of his choice was not violated, and appellant was not egregiously harmed by the jury charge. Therefore, we affirm the trial court's judgment.

Sandee Bryan Marion, Justice

Do not publish