No. PD-0756-15

# IN THE COURT OF CRIMINAL APPEALS

## AT AUSTIN, TEXAS

---

**CHARLES LAVOY ARRINGTON**

Appellant

VS.

**THE STATE OF TEXAS**

Appellee

**FOURTH COURT OF APPEALS CAUSE NO. 04-12-00430-CR**

---

**ON APPEAL FROM THE FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS**

---

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

---

**JORGE G. ARISTOTELIDIS**

**Tower Life Building
310 South St. Mary's St., Suite 1830
San Antonio, Texas 78205
(210) 277-1906
jgaristo67@gmail.com
SBN: 00783557**

FILED IN
COURT OF CRIMINAL APPEALS

July 24, 2015

ABEL ACOSTA, CLERK

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF JUDGE, PARTIES AND COUNSEL

A complete list of the names and addresses of all interested parties is provided below so the members of this Honorable Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision in this case.

### Complainant:

The State of Texas

### Petitioner:

Charles Lavoy Arrington

### Counsel for the Petitioner:

Mr. Jorge G. Aristotelidis
Tower Life Building
310 South St. Mary's St., Suite 1830
San Antonio, Texas 78205

### Counsel For the State:

Ms. Lauren Scott
Assistant District Attorney
Bexar County Justice Center
101 W. Nueva St.
San Antonio, Texas 78205

### Trial Judge:

Honorable Sharon MacRae
Visiting Judge
187th District Court
Bexar County, Texas

# TABLE OF CONTENTS

PAGE(S)

IDENTITY OF THE JUDGE, PARTIES AND COUNSEL    ii

INDEX OF AUTHORITIES    iv

STATEMENT REGARDING ORAL ARGUMENT    v

STATEMENT OF THE CASE    vi

STATEMENT OF PROCEDURAL HISTORY    vii

GROUND FOR REVIEW    viii

ARGUMENT    1

PRAYER FOR RELIEF    13

CERTIFICATE OF SERVICE    14

CERTIFICATE OF COMPLIANCE    15

# INDEX OF AUTHORITIES

**TEXAS COURT OF CRIMINAL APPEALS CASES:**

*Arrington v. State*, 451 S.W.3d 834 (Tex. Crim. App. 2015)………...............vii,1

*Schutz v. State*, 957 S.W.2d 52 (Tex. Crim. App. 1997)………………………..9,11

*Yount v. State*, 872 S.W.2d 706 (Tex. Crim. App. 1993)……………………7,10,11

**TEXAS COURT OF APPEALS CASES:**

*Arrington v. State*, 413 S.W.3d 106 (Tex. App. – San Antonio 2013)…vii,1,7,12,13

*Arrington v. State*, 2015 Tex. App. LEXIS 2529
    (Ct. App. - San Antonio)(Mar. 18, 2015)(unpublished)………………vii,8,9

*Fuller v. State*, 224 S.W.3d 823 (Tex. App.—Texarkana 2007, *no pet*.)…………10

*Lane v. State*, 257 S.W.3d 22, 27
    (Tex. App.--Houston [14th Dist.] 2008, pet. ref'd)…………………………...10

*Long v. State*, No. 2008 Tex. App. LEXIS 8885
    (Tex. App.--Tyler Nov. 26, 2008, no pet.) (unpublished)…………………10

*Moran v. State*, 350 S.W.3d 240, 242-243 (Ct. App. San Antonio 2011)………….9

*Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001………………………...9

**TEXAS RULES OF EVIDENCE:**

Tex. R. Evid. 702………………………………………………………………7,9
Tex. R. Evid. 608………………………………………………………………...8

**MISCELLANEOUS:**
3 W. LaFave, et al., Criminal Procedure § 11.10(c) (2d ed. 1999))………………..9

**APPENDIX**      Arrington v. State, 2015 Tex. App. LEXIS 2529
                 (Tex. App. San Antonio Mar. 18, 2015)

## STATEMENT REGARDING ORAL ARGUMENT

Appellant's case presents an outrageous case of ineffective assistance of counsel, whereby defense counsel wholly failed to object to trial testimony from two State's witnesses, one of whom gave her expert opinion about the truthfulness of the complainant's criminal accusations, and the other of whom gave lay testimony that improperly bolstered the complainant's credibility, such that defense counsel's omissions could not be justified as reasonable trial strategy, after a review of the cold, appellate record. Because the prohibition against opinion and bolstering testimony is well-settled by this Court's jurisprudence, oral argument would assist this Court in determining whether it should review Petitioner's ineffective assistance claim while on direct appeal, or require the Petitioner to expend more resources and further delay the process, by seeking relief *via* the post-conviction, habeas process.

## STATEMENT OF THE CASE

On July 9th, 2012, jury selection began in the trial of Mr. Charles Lavoy Arrington (Petitioner), who was charged with six counts of aggravated sexual assault, and one count of indecency with a child by sexual contact, in the 187th District Court of Bexar County, Texas, in San Antonio, Texas, before the Honorable Sharon MacRae, visiting judge presiding. On July 13, 2012, Mr. Arrington was convicted by the jury of five counts of aggravated sexual assault of a child, and one count of indecency with a child by sexual contact. That same day, he was sentenced by the trial court to 60 years on five of the six aggravated sexual assault counts, and to 20 years for the indecency with a child by sexual contact count, with all sentences running concurrent. Because the jury was unable to reach a verdict on Count III, the court declared a mistrial.

## STATEMENT OF PROCEDURAL HISTORY

On August 14, 2013, the Fourth Court of Appeals of San Antonio reversed Mr. Arrington's conviction, and remanded for a new trial, via published opinion. *See Arrington v. State*, 413 S.W.3d 106 (Tex. App. – San Antonio 2013).

On January 14, 2015, this Court reversed the Fourth Court of Appeals decision, and remanded all remaining, unresolved appellate issues for its consideration. *See Arrington v. State*, 451 S.W.3d 834 (Tex. Crim. App. 2015).

On March 18, 2015, the Fourth Court of Appeals decided all remaining and unresolved appellate issues, and affirmed Petitioner's convictions. *See Arrington v. State*, 2015 Tex. App. LEXIS 2529 (Tex. App. San Antonio Mar. 18, 2015) (unpublished).

On May 21, 2015, the Fourth Court of Appeals denied Petitioner's motions for panel, and *en banc* rehearing.

Petitioner's PDR is due to be filed Wednesday, July 22nd, 2015.

# **GROUND FOR REVIEW**

Whether the Petitioner's allegation that his trial counsel rendered ineffective assistance of counsel by completely failing to object to all of the expert and lay testimony about the truth of H.A.'s allegations against Petitioner that was presented by the State in its case in chief, was so outrageous as to eliminate any reasonable trial strategy, and thus allow its consideration on direct appeal, without the need to require Petitioner to expend additional resources and further delay, *via* the post-conviction, habeas process?

# ARGUMENT

## 1.    Posture of the Case:

At trial, the complainant (H.A.) made a number of sexual assault allegations against the Petitioner.   There was no medical, or other evidence presented in support of these accusations, thus rendering the trial a "he said, she said" swearing match between them.  *See Arrington v. State*, 413 S.W.3d 106, 113 (Tex. App. San Antonio 2013)(overruled on other grounds by *Arrington v. State*, 451 S.W.3d 834 (Tex. Crim. App. 2015)). With this backdrop, in its case in chief, the state presented testimony from outcry witness Lisa Dawn McGinnis (McGinnis), and from H.A.'s mother, Virginia Lee Johnson (Jenny).  The following are excerpts of their testimony, which is the subject of the Petitioner's PDR:

## 2.    Expert Opinion about H.A.'s Credibility from the State's Outcry Witness:

On direct examination, the state called McGinnis, the school counselor at H.A.'s school, who was called as the outcry witness.  McGinnis testified that she had two conversations with H.A. at her school.  Having learned of a rumor that H.A. had stated that she was pregnant, she questioned H.A. about it.  3 RR 71. When confronted with the rumor, H.A. "said, no, it was a misunderstanding that she was just talking about, basically, where babies come from and her friends had misunderstood her and at that point [McGinnis] believed her.  It was a very short interview," adding that H.A. "handled herself very well."   3 RR 72.  When asked

1

what McGinnis's "feeling" at the time of the conversation with H.A., she related that she believed that "it was just a rumor…[t]hat some kids were talking about how babies -- where babies come from." 3 RR 73. McGinnis added that while the conversation warranted a phone call about it to H.A.'s mother, McGinnis "didn't really feel like there was anything else to the information so [she] didn't…make any other phone calls at that point," further elaborating that it was a "judgment call somewhat on" her part "based on [her] experience and what [McGinnis has] seen with other students." 3 RR 73-74

Two days later, McGinnis had a second conversation with H.A., and revisited the issues based on continuing rumors that she was pregnant, and this time, that H.A. was pregnant with her father's baby. 3 RR 74-75. It was during this second interview that H.A. first alleged that the Petitioner had sexually assaulted her. 3 RR 76-78.

McGinnis testimony was buttressed by her academic and professional background. She testified that at the time of H.A.'s outcry, she worked at Timberwood Park Elementary, and that she'd previously worked as a school counselor for 11 years and in school administration for twenty-one years. She added that she had a bachelor's in early childhood education, a Master's in counseling, and a Ph.D. in counseling and supervision, and that she was a licensed professional counselor, outside of her school counseling certification. 3 RR 70.

2

During McGinnis's testimony, without any objections by the defense, the prosecutor asked McGinnis questions relating to whether H.A.'s sexual assault allegation was credible, specifically, McGinnis's opinion about whether H.A. was telling the truth:

Prosecutor: Now, did you ask any questions -- did you do anything to check **the veracity** of her story?

McGinnis: I asked enough questions to make a decision about whether I needed to report or not. Based on what she said, based on her demeanor, based on the fact that I did not have any other concerns with her behavior or academically, what I knew about her at that point, I made enough -- got enough information to make a decision about making a report. I was leaving that school at the end of the year. This was the day before schooling got out so I didn't –

Prosecutor: Hold on there one second. I guess what I want to ask you is: You collected enough information to make a report.

McGinnis: Uh-huh.

Prosecutor: All right?

McGinnis: Yes.

Prosecutor: And clearly you made a report because you're here today.

McGinnis: Yes.

Prosecutor: What did -- what details did you **see that lent credibility to her story** that made you know that **she was telling you the truth?**

McGinnis: I felt that **she was telling me the truth** based on the fact that she had details, for example, what movie they were watching;

3

that her brother was playing PlayStation when it happened when she was nine; that she could very much put herself in the situation of what was going on exactly at that time.

Those were the things that made me feel like **she was telling the truth.**

Prosecutor: Okay. Now, what told you that those were the important factors?

McGinnis: Based on my experience that I've had with other students, based on my educational experience. Those were the things that I fell back on.

Prosecutor: So you were trained to look for these signs?

McGinnis: As a counselor, yes.

Prosecutor: All right. Have you had the occasion to deal with somebody **who made a false report?**

McGinnis: Yes.

Prosecutor: Okay. Now, **can you distinguish those instances**, in general, to this one? **I mean, what did she do that might have happened had she been given [sic] a false report**?

McGinnis: Most of the time, not all the time, but most of the time **when students give a false report** they generally will seek you out. Haley did not seek me out. She did the seek out an adult. She was actually telling another student, which my experience has been that's a cry for help when you don't know what else to do. Most of the time the students who have **made false reports** they've actually sought me out or told another adult. The first time I talked to her she didn't want to tell me. She was fearful **and that also made me feel like that this was a truthful report.**

\* \* \*

4

Prosecutor: And does that mean that the person **has a false memory**? That this is, you know, **something that they just concocted**?

McGinnis: **No.** It just means that, you know, like I said, with any of us, as time goes by, you might remember things that you didn't remember prior.

3RR 80-83 (emphasis by Appellant).

### 3. Lay Testimony About H.A.'s Truthfulness:

The State later called Virginia Lee Johnson (Jenny), H.A.'s mother. On direct, the prosecutor asked Jenny whether she'd spoken to her daughter about the sexual assault allegations. The following colloquy ensued:

Prosecutor: And has she, I guess, changed from her initial reaction of talking about what happened?

Jenny: You mean -- not really, no. You mean, like personality?

Prosecutor: Yes. I mean, is she still fearful and embarrassed when she talks about it?

Jenny: No but we don't really talk **about it** all that much but I ask her questions **and she's very honest with her answer** and she's not - she doesn't hide the answers. **She tells me the truth.**

Prosecutor: Okay. So do you generally initiate the conversations with her or does she talk to you about what happened to her at her dad's house?

Jenny: She talks to me when we do talk about it.

Prosecutor: Now, have you ever talked with Haley about how serious what happened to her is?

Jenny: Yes.

5

Prosecutor: And did you -- I mean, were you surprised when this first came out?

Jenny: Yes.

Prosecutor: Why were you so surprised?

Jenny: Because I didn't think this could happen.

Prosecutor: You didn't think this could happen to your daughter?

Jenny: Yes.

Prosecutor: Did you talk to Haley about the fact that police were going to be involved and she was going to have to –

Jenny: Yes.

Prosecutor: -- follow through with that?

Jenny: Yes.

Prosecutor: Did you talk to her about how serious this was?

Jenny: Yes.

**Prosecutor: Did you ask Haley if she was telling the truth?**

**Jenny: Yes.**

**Prosecutor: And what did she say to you?**

**Jenny: She said yes and she started crying.**

3 RR 48-50 (emphasis by Appellant).

**4. Impeachment of H.A.'s Testimony:**

H.A.'s testimony was impeached by the prosecutor. On direct examination, the prosecutor asked H.A., why she had "lied" to H.A.'s mother by failing to tell her about the Appellant's sexual assault, to which H.A. claimed that "her friends" made her "do it." *See* 3 RR 206-207.

**5. State's Closing Arguments:**

During her closing arguments, the prosecutor argued that the Petitioner's guilt was substantiated by McGinnis' testimony, as follows:

> Ms. McGinnis has dealt with kids for 21 years. She told you that generally they do make delayed outcries. She told you that when a kid isn't seeking out the adult to share this information **that has a lot to do with whether or not you'd want to believe them** or how you put things in perspective. Haley didn't seek anybody out.

5 RR 35-36 (emphasis by Appellant).

**6. Fourth Court of Appeals' Decision:**

On original submission, the Fourth Court noted that "the State asked the school counselor, McGinnis, her opinion on the truthfulness of H.A.'s accusations," and that "the State concedes that McGinnis answered direct questions on H.A.'s credibility and truthfulness." *See Arrington*, 413 S.W.3d at 113. The Court agreed that her opinion on H.A.'s truthfulness was not admissible. *Id*. (citing Tex. R. Evid. 702; *Yount v. State*, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993)), and noted that defense counsel did not object to their admission at trial. *Id*. at 114.

7

The Court also noted that "[t]he State also asked H.A.'s mother questions about H.A.'s truthfulness," and noted that "[t]he credibility of a witness may be supported by evidence in the form of opinion, but the evidence may only refer to character for truthfulness and evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked." *Id*. at 114 (citing Tex. R. Evid. 608.)

However, after remand from this Court, the Fourth Court of Appeals concluded that "[t]he above questioning occurred in the context of the State asking McGinnis what made her believe H.A. enough to make an official report," and "in the context of her following up on the second rumor." *Arrington v. State*, 2015 Tex. App. LEXIS 2529 *11-12 (Tex. App. San Antonio Mar. 18, 2015) (unpublished). Acknowledging that "[d]uring cross-examination, defense counsel asked McGinnis only a few questions," it elaborated that "[its] review of the record indicates defense counsel's strategy in not objecting and conducting a limited cross-examination may have been for the purpose of avoiding emphasizing the matter before the jury…" *Id.* at *12.

As to Jenny's bolstering testimony, the Court reasoned that "[t]he mother's comments were brief and somewhat vague as to the content of what H.A. said that was 'truthful,'" restating that its "review of the record indicates defense counsel's

strategy in not objecting may have been for the purpose of avoiding emphasizing the matter before the jury." *Id*. at * 14.

The Court concluded that the Petitioner therefore "failed to satisfy his burden of proving that there was no imaginable strategy for defense counsel's failure to object." *Id*.

In determining whether trial counsel rendered ineffective assistance of counsel, when the record contains no evidence of counsel's reasons for the challenged conduct, the Court "'will assume a strategic motivation if any can possibly be imagined,' and will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it." *See Moran v. State*, 350 S.W.3d 240, 242-243 (Ct. App. San Antonio 2011) (citing *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (quoting 3 W. LaFave, et al., Criminal Procedure § 11.10(c) (2d ed. 1999)). *See also Vasquez v. State*, 830 S.W.2d 948, 950-51 (Tex. Crim. App. 1992)("when a cold record clearly confirms no reasonable trial counsel could have made [the complained of] trial decisions, to hold counsel ineffective is not speculation.").

To be admissible, expert testimony must "assist" the trier of fact. *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997) (citing Tex. R. Crim. Evid. 702) (other citations omitted). Expert testimony assists the trier of fact when the jury is

9

not qualified to "the best possible degree" to determine intelligently the particular issue without the help of the testimony. *Id*. (citations omitted). But, the expert testimony must aid -- not supplant -- the jury's decision. *Id*. Expert testimony does not assist the jury if it constitutes "a direct opinion on the truthfulness" of a child complainant's allegations. *Id*. (citing *Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993)). *See also Long v. State*, No. 12-07-00256-CR, 2008 Tex. App. LEXIS 8885, 2008 WL 5050099, at *4 (Tex. App.--Tyler Nov. 26, 2008, no pet.) (noting that an expert may not testify that a witness is truthful.) (citing *Yount*, at 712) and *Lane v. State*, 257 S.W.3d 22, 27 (Tex. App.--Houston [14th Dist.] 2008, pet. ref'd)). On original submission, the Fourth Court noted that, indeed, "the State concede[d] that McGinnis answered direct questions on H.A.'s credibility and truthfulness." *See Arrington*, 413 S.W.3d at 113.

Likewise, efforts by Jenny to bolster the credibility of those allegations (*Fuller v. State*, 224 S.W.3d 823 (Tex. App.—Texarkana 2007, *no pet*.) (allowing the State to pre-emptively "rebut," through lay opinion testimony, attacks on its complaining witnesses solely on the basis of the cross-examination of that witness was inconsistent with the *Schutz* finding that the defense does not "open the door" for the same testimony by an expert by cross-examining H.A. herself.) (citing *Schutz*, at 72)), are also prohibited by this Court's precedent.

The Fourth Court's focus on the "context" of the prohibited questions, whether McGinnis was sufficiently convinced that H.A. told the truth, to justify making an official report, is irrelevant. The focus is not on the context of the opinion about H.A.'s credibility, but on the fact that the opinion was given, not once, but repeatedly. As the outcry witness, McGinnis function was solely to report about the sexual assault allegations, not to render a carefully crafted opinion as to why she believed that H.A.'s allegations - the *very heart* of the prosecution's case – were true. As to the Court's second observation, that defense counsel's failure to object and his conducting a limited cross-examination may somehow have been strategy aimed at avoiding emphasizing the matter before the jury, this completely misses the point. Failing to object to clear and deliberate calls for opinion testimony about the credibility of the complainant's sexual assault allegations is not trial strategy, it is an abject failure to protect the jury's province as the sole judge of credibility.

It's also difficult to accept the Fourth Court's conclusion that, as to Jenny's testimony, her "comments were brief and somewhat vague as to the content of what H.A. said that was 'truthful.'" A review of the Jenny's testimony leaves no doubt that the subject matter about which Jenny believed H.A. to be truthful, to the point of tears, were the sexual abuse allegations against the Petitioner.

At the time of trial, *Yount* and *Schutz* had been well-settled precedent for over 18 and 14 years, respectively. Rather, the relevant inquiry is: how can defense counsel sit by idly while the state carefully prepares and engages in a long, roundly prohibited line of questioning, that repeatedly, and over the course of two witnesses, produces devastating opinion testimony, constitute a reasonable trial strategy? It doesn't. Respectfully, the Fourth Court of Appeals has erred in failing to identify defense counsel's omissions as outrageous, ineffective assistance of counsel.

Counsel's ineffective assistance prejudiced the Petitioner, for the following reasons:

1. H.A.'s credibility had already been compromised when none other than the prosecutor confronted H.A. about why she lied when she first spoke to McGinnis, which the Fourth Court noted in its first opinion. *See Arrington*, 413 S.W.3d at 115, 117.

2. The trial was a classic he-said, she-said swearing match, without medical or other evidence favoring the prosecutions case. Therefore, McGinnis expert, and H.A.'s lay witness validation of H.A.'s accusations, unfairly and decidedly tipped the scales in favor of a conviction;

3. The prohibited testimony was a far cry from an unexpected blurb which could ostensibly be neutralized by defense counsel's decision to not revisit and re-emphasize the testimony before the jury. Rather, it was a carefully crafted and effective question and answer colloquy between the prosecutor and the two witnesses. Indeed, the prosecutor took all of the liberties that defense counsel permitted her;

4. The prosecutor specifically emphasized and argued McGinnis' opinion about H.A. truthfulness in closing argument, and supported that opinion

12

by also discussing McGinnis' expertise, which in the eyes of the jury, fully qualified her to evaluate the truth of H.A.'s accusations;

5. The fairness of Petitioner's trial was seriously hampered by the failure on the part of the trial court (and, for that matter, defense counsel) to ensure that a proper unanimity instruction was given in the case, which was conceded error by the state during the Fourth Court's original consideration. *See Id*. at 113. While this Court ultimately determined that the lack of a unanimity instruction would not, on its own, have been sufficient to constitute *Almanza* error, thus reversing the Fourth Court's determination, it should, when combined with counsel's outrageous ineffective assistance, and the above enumerated factors, militate in favor of a finding that that the Petitioner's trial was fundamentally unfair, and its result unreliable.

Lastly, the opportunistic role by the state in this case cannot be ignored. During oral argument before this Court, on original submission, the undersigned asked the Court to consider the State's unclean hands in the trial process. Unlike unobjected to hearsay, which retains is probative properties, truth opinions about a complainant's allegations are NEVER admissible. Sure, defense counsel's dereliction is well established, but it did not give the prosecutor a license to elicit a wholly inadmissible line of questioning, in its quest, not, to do justice, but to secure a conviction, a point eloquently noted by Justice Chapa in a separate, concurring opinion. *See Arrington*, 413 S.W.3d at 119 (J. Chapa concurring) ("…the trial court failed in its obligation to submit a charge that does not allow for the possibility of a non-unanimous verdict…*[a]nd the State failed in its primary duty, which is not to convict, but to do justice, by failing to assure that the convictions were constitutionally obtained."*). The state's win-at-all-cost efforts in

13

opportunistically producing, introducing, and arguing inadmissible evidence to bag a conviction in this case was clear prosecutorial misconduct. If this Court is serious about maintaining the integrity of the trial process, it should grant PDR, reverse the Petitioner's conviction, and admonish the State about its ethical duties at trial. Empty warnings in opinions that affirm convictions that are the product of prosecutorial misdeeds, do little to bring about true reform.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Petitioner respectfully requests that this Court grant his PDR, order the necessary briefing, reverse the judgment of the Fourth Court of Appeals, and remand this case for a new trial.

Respectfully submitted,

Jorge G. Aristotelidis
Tower Life Building
310 South St. Mary's St., Suite 1830
San Antonio, Texas 78205
(210) 277-1906
jgaristo67@gmail.com

By:  /s/ Jorge G. Aristotelidis
State Bar No. 00783557

14

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing "Appellant's Petition for Discretionary Review," was served upon opposing counsel, the Appellate Division of the Bexar County District Attorneys Office, and to Mr. Matthew Paul, State's Attorney, by e-mailing a copy to the Bexar County District Attorneys Office at the Paul Elizondo Tower, 101 W. Nueva, Rm. 370 San Antonio, Texas 78205, and P.O. Box 12405, Austin, Texas, 78711, respectively, on this the 22nd day of July, 2015.

/s/ Jorge G. Aristotelidis

## CERTIFICATE OF COMPLIANCE

In accordance with Tex. R. App. P. 9.4(i)(1) and 9.4(i)(2(D), I hereby certify that this brief contains 3,153 words, which have been counted by use of the "Word" program with which this brief was written.

/s/ Jorge G. Aristotelidis



Ⓐ Neutral

# *Arrington* v. State

Court of Appeals of Texas, Fourth District, San Antonio

March 18, 2015, Delivered; March 18, 2015, Filed

No. 04-12-00430-CR

## Reporter

2015 Tex. App. LEXIS 2529

Charles **ARRINGTON**, Appellant v. The STATE of Texas, Appellee

**Notice:** PLEASE CONSULT THE TEXAS RULES OF APPELLATE PROCEDURE FOR CITATION OF UNPUBLISHED OPINIONS.

**Prior History:** **[\*1]** From the 187th Judicial District Court, Bexar County, Texas. Trial Court No. 2011CR1663. Honorable Sharon MacRae, Judge Presiding.
*Arrington* v. State, 2015 Tex. Crim. App. LEXIS 15 (Tex. Crim. App., Jan. 14, 2015)

**Disposition:** AFFIRMED.

## Core Terms

credibility, ineffective, unanimous, sexual, sexual organ, asserts, jury charge, penetration, counselor, questions, talk, pet, counsel's failure, outrageous, issues

## Case Summary

## Overview

HOLDINGS: [1]-Court's failure to submit a unanimity instruction did not amount to fundamental error mandating automatic reversal because defendant did not have a right to a unanimous jury verdict under the Sixth and Fourteenth Amendments; [2]-Counsel was not ineffective for not objecting to testimony by the school counselor under *Tex. R. Evid. 702* about the truthfulness of the alleged victim's sexual misconduct accusations because the counsel's strategy in not objecting may have been for the purpose of avoiding emphasizing the matter before the jury; [3]-Counsel was not ineffective for not objecting to testimony by the alleged victim's mother under *Tex. R. Evid. 608* about the truthfulness of the alleged victim's sexual misconduct accusations because the mother's comments were brief and somewhat vague and counsel's strategy may have been to avoid emphasizing the matter before the jury.

## Outcome

Judgment affirmed.

## LexisNexis® Headnotes

Constitutional Law > ... > Fundamental Rights > Criminal Process > Right to Jury Trial

Criminal Law & Procedure > Trials > Verdicts > Unanimity

*HN1* The U.S. Supreme Court holds that although the Sixth Amendment right to trial by jury requires a unanimous jury verdict in federal criminal trials, it does not require a unanimous jury verdict in state criminal trials. A state criminal defendant, at least in noncapital cases, has no federal right to the unanimous jury verdict. Although the Sixth Amendment is applicable to the States by virtue of the Fourteenth Amendment, the United States Constitution clearly does not grant a right to the unanimous verdict.

Criminal Law & Procedure > ... > Counsel > Effective Assistance of Counsel > Tests for Ineffective Assistance of Counsel

Criminal Law & Procedure > ... > Counsel > Effective Assistance of Counsel > Trials

Criminal Law & Procedure > Appeals > Standards of Review > General Overview

*HN2* An appellate court reviews an appellant's claim of ineffective assistance of counsel under a well-established standard of review. A defendant must show (1) that counsel's performance is deficient, i.e., counsel's assistance falls below an objective standard of reasonableness; and (2) prejudice, i.e., a reasonable probability that, but for counsel's unprofessional errors, a result of the proceeding will be different. The reasonable probability is a probability sufficient to undermine confidence in an outcome. This two-pronged test is a benchmark for judging whether counsel's conduct so undermines the proper functioning of the adversarial process that a trial cannot be relied on as producing a reliable result.

Criminal Law & Procedure > ... > Counsel > Effective Assistance of Counsel > Trials

Criminal Law & Procedure > ... > Counsel > Effective Assistance of Counsel > Tests for Ineffective Assistance of Counsel

Criminal Law & Procedure > Appeals > Procedural Matters > Records on Appeal

Criminal Law & Procedure > Appeals > Standards of Review > General Overview

*HN3* Generally, a trial record will not suffice to establish an ineffective assistance of counsel claim. When ineffective assistance is raised on direct appeal, appellate counsel and a court must proceed on the trial record not developed for an object of litigating or preserving the claim and thus is often incomplete or inadequate for this purpose. Nonetheless, some claims may be disposed of on direct appeal where trial counsel's ineffectiveness is so apparent from the record. When no reasonable trial strategy can justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as he or she does. When the record contains no evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation if any can possibly be

imagined, and will not conclude the challenged conduct constitutes deficient performance unless the conduct is so outrageous that no competent attorney will engaged in it.

> Evidence > ... > Testimony > Expert Witnesses > General Overview

> Evidence > Admissibility > Expert Witnesses

*HN4* Expert testimony that a particular witness is truthful is inadmissible under *Tex. R. Evid. 702*.

> Evidence > ... > Impeachment > Bad Character for Truthfulness > Opinion & Reputation

*HN5* The credibility of a witness may be supported by evidence in the form of opinion, but the evidence may only refer to character for truthfulness and evidence of truthful character is admissible only after the character of the witness for truthfulness is attacked. *Tex. R. Evid. 608*.

**Counsel:** For APPELLANT: Jorge G. Aristotelidis, Aristotelidis & Moore, San Antonio, TX.

For APPELLEE: Jay Brandon, Assistant District Attorney, San Antonio, TX.

**Judges:** Opinion by: Sandee Bryan Marion, Chief Justice. Sitting: Sandee Bryan Marion, Chief Justice, Marialyn Barnard, Justice, Luz Elena D. Chapa, Justice.

**Opinion by:** Sandee Bryan Marion

# Opinion

## MEMORANDUM OPINION

AFFIRMED

This appeal is on remand from the Texas Court of Criminal Appeals. Charles *Arrington* is appealing his conviction on five counts of aggravated sexual assault of a child and one count of indecency with a child by sexual contact. In an opinion dated August 14, 2013, this court reversed appellant's conviction after concluding appellant was denied a fair trial based on the trial court's failure to include a unanimity instruction in the jury charge and, thus, was egregiously harmed.[1] *See Arrington* v. State*, 413 S.W.3d 106 (Tex. App.—San Antonio 2013)*, *re v 'd & remanded*,*    S.W.3d    , No. PD-1448-13, 2015 Tex. Crim. App. LEXIS 15, 2015 WL 170110 (Tex. Crim. App. Jan. 14, 2013)*. On the State's appeal to the Court of Criminal Appeals, the Court concluded appellant was not egregiously harmed, and remanded the cause to this court for consideration of appellant's remaining **[*2]** issues on appeal.

On original appeal to this court, appellant raised five issues: (1) the trial court committed jury charge error by failing to give a unanimity instruction as to each separate criminal incident alleged at trial, as charged in each separate count/offense in the indictment; (2) the trial court's jury charge error egregiously harmed him; (3) alternatively, the trial court's jury charge

---

[1] On appeal, the State conceded the lack of such an instruction in the jury charge was error.

error rendered his trial fundamentally unfair, in violation of the *Due Process Clause of the Fourteenth Amendment of the United States Constitution*; (4) his trial counsel rendered ineffective assistance of counsel by failing to object to the State's elicitation of expert witness testimony about the truthfulness of the complainant's sexual misconduct accusations; and (5) his trial counsel rendered ineffective assistance of counsel by failing to object to the State's elicitation of lay witness testimony about the truthfulness of the complainant's allegations. Because the State conceded error (the first issue), and we reversed based on our conclusion that appellant was egregiously harmed (the second issue), our opinion did not address appellant's final three arguments. After considering **[*3]** these remaining issues, we affirm.

## DUE PROCESS

Counts one through five and count seven against appellant alleged that, on or about March 26, 2010, appellant committed the offense of aggravated sexual assault of a child (H.A.) by intentionally and knowingly (1) causing the penetration of the female sexual organ of H.A. by appellant's male sexual organ; (2) causing the penetration of the anus of H.A. by appellant's male sexual organ; (3) causing the female sexual organ of H.A. to contact the mouth of appellant; (4) causing the penetration of the mouth of H.A. by appellant's male sexual organ; (5) causing the penetration of the female sexual organ of H.A. by appellant's finger; and (7) causing the penetration of the anus of H.A. by appellant's finger. Count six asserted a charge of indecency with a child by intentionally and knowingly engaging in sexual conduct or contact on or about the same date by causing H.A., who was under seventeen years of age, to touch part of the genitals of appellant with the intent to arouse or gratify the sexual desire of any person. The State presented evidence of more than one instance of sexual contact to support each count; however, the jury instructions **[*4]** did not specifically inform the jurors that they had to be unanimous about which separate instance of abuse they believed constituted the commission of the offense for purposes of each individual count.[2] Instead, the trial court's instructions permitted the jurors to consider whether appellant was guilty of each of the seven alleged offenses, and the jurors were provided with seven different verdict forms.

Appellant asserts the trial court's failure to submit a unanimity instruction as to each individual count amounted to fundamental trial error in violation of the *Due Process Clause to the Fourteenth Amendment to the U.S. Constitution*, which mandates automatic reversal of his convictions. We disagree.

*HN1* ″The [U.S. Supreme] Court has held that although the *Sixth Amendment* right to trial by jury requires a unanimous jury verdict in federal criminal trials, it does not

---

[2] For example, with respect to count one, which alleged that appellant's male sexual organ penetrated H.A.'s female sexual organ, H.A.'s testimony presented evidence of two separate criminal acts that would constitute this offense in her description of the events in her shower and those occurring on the mattress in appellant's girlfriend's living room.

require a unanimous jury verdict in state criminal **[\*5]** trials." *McDonald v. City of Chicago, Ill., 561 U.S. 742, 766 n.14, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010)*; *see also Schad v. Arizona, 501 U.S. 624, 634 n. 5, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991)* ("[A] state criminal defendant, at least in noncapital cases, has no federal right to a unanimous jury verdict."); *Romero v. State, 396 S.W.3d 136, 147 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd)* (recognizing that, although *Sixth Amendment* is applicable to the States by virtue of the *Fourteenth Amendment*, "[t]he United States Constitution clearly does not grant a right to a unanimous verdict"); *Phillips v. State, 130 S.W.3d 343, 351 n.6 (Tex. App.—Houston [14th Dist.] 2004)*, *aff'd*, *193 S.W.3d 904 (Tex. Crim. App. 2006)*. Therefore, we do not believe the trial court's error violated appellant's federal due process rights or amounted to an automatic reversal. *Romero, 396 S.W.3d at 147* (concluding appellant's argument lacked merit and proceeding to examine appellant's claimed right to unanimity of jury verdict under only Texas law); *see also Almanza v. State*, 686 S.W.2d 157, 172-74 (disapproving of cases which suggest jury charge error requires an "automatic" reversal).

## INEFFECTIVE ASSISTANCE OF COUNSEL

In two issues, appellant asserts trial counsel was ineffective for not objecting to testimony about the truthfulness of H.A.'s sexual misconduct accusations.

### 1. Standard of Review

*HN2* We review an appellant's claim of ineffective assistance of counsel under the well-established standard of review. *See Strickland v. Washington, 466 U.S. 668, 690, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)*; *Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999)*. The defendant must show (1) that counsel's performance was deficient, *i.e.*, counsel's assistance fell below an objective standard of reasonableness; **[\*6]** and (2) prejudice, i.e., a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Thompson, 9 S.W.3d at 812*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. This two-pronged test is the benchmark for judging whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a reliable result. *Id*.

*HN3* Generally, the trial record will not suffice to establish an ineffective assistance of counsel claim. *Id. at 813-14*. When, as here, ineffective assistance is raised on direct appeal, appellate counsel and the court must proceed on a trial record not developed for the object of litigating or preserving the claim and thus is often incomplete or inadequate for this purpose. *Freeman v. State, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003)*; *cf. Massaro v. United States, 538 U.S. 500, 504-05, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003)*. Nonetheless, some claims may be disposed of on direct appeal where "trial counsel's ineffectiveness is so apparent from the

record." *Massaro, 538 U.S. at 508*; *Freeman, 125 S.W.3d at 507*; *see also Andrews v. State, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005)*; *Thompson, 9 S.W.3d at 814 n.6*. "[W]hen no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately **[*7]** reflects the trial counsel's subjective reasons for acting as [he] did." *Andrews, 159 S.W.3d at 102*.

When the record contains no evidence of counsel's reasons for the challenged conduct, we "'will assume a strategic motivation if any can possibly be imagined,' and will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it." *Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)*; *Moran v. State, 350 S.W.3d 240, 243 (Tex. App.—San Antonio 2011, no pet.)*. Here, no motion for new trial was filed, and no post-trial evidentiary hearing was held. Therefore, our review is limited to the trial record.

## 2. School Counselor's Testimony

During trial, the State asked Lisa McGinnis, the school counselor, for her opinion on the truthfulness of H.A.'s accusations and the State concedes McGinnis answered direct questions on H.A.'s credibility and truthfulness. Defense counsel did not object. Appellant asserts McGinnis was neither qualified nor presented as an expert on the subject of "manipulation," "fantasy," or any other accepted, expert-based aspect of credibility. Appellant also asserts McGinnis's testimony was not presented as a response to the defense "opening the door." Appellant asserts the State portrayed McGinnis as an "expert" at trial. ***HN4*** Expert **[*8]** testimony that a particular witness is truthful is inadmissible under *Texas Rule of Evidence 702*. *Yount v. State, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993)*.

H.A. had testified she told her friends about the incidents that occurred over spring break. McGinnis approached H.A. twice about rumors, which were circulating at her elementary school, that H.A. was pregnant. The first time, H.A. told McGinnis it was a joke and her friends made her do it. The second time, H.A. told McGinnis about the sexual abuse.

When McGinnis took the stand, the State first questioned her about her qualifications:

> Q: And so how long have you worked as a school counselor?
>
> A: I've been a school counselor for 11 years.
>
> Q: And how long have you worked in school administration.
>
> A: Twenty-one years.
>
> Q: Now, what age groups have you worked with?
>
> A: Mostly elementary school but the last two years I worked with middle schools anywhere from five to 15.

Q: Now, what kind of education do you have?

A: I have a [sic] early childhood education degree, a bachelor's. I have a master's in counseling and then a Ph.D. in counseling and supervision and I'm a licensed professional counselor outside of my school counseling certification.

The State then asked her about H.A.'s credibility:

Q: What did — *what details did you* **[\*9]** *see that lent credibility to her story that made you know that she was telling you the truth?*

A: I felt that she was telling me the truth based on the fact that she had details, for example, what movie they were watching; that her brother was playing PlayStation when it happened when she was nine; that she could very much put herself in the situation of what was going on exactly at that time. Those were the things that made me feel like she was telling the truth.

Q: Okay. Now, what told you that those were the important factors?

A: Based on my experience that I've had with other students, based on my educational experience. Those were the things that I fell back on.

Q: *So you were trained to look for these signs?*

A: *As a counselor, yes.*

. . .

Q: . . . I mean, what did she do that might have happened had she been giving a false report?

A: . . . The first time I talked to her she didn't want to tell me. She was fearful and *that also made me feel like that this was a truthful report.*

[Emphasis added.]

Appellant argues this amounted to an expert opinion that H.A.'s accusation against him was the truth. Appellant asserts trial counsel's failure to object cannot be considered trial strategy, and he **[\*10]** relies on several cases that appear to stand for the proposition that there are no circumstances in which allowing a witness to opine on the truthfulness of the complainant in a case where there is no physical or scientific evidence linking the defendant to the crime and credibility of the complainant is the primary issue, might be considered sound trial strategy. *See Fuller v. State, 224 S.W.3d 823, 835 (Tex. App.—Texarkana 2007, no pet.)* ("defense counsel's tactic seems to have been to allow, without objection, the State's witnesses to testify to the credibility and truthfulness of J.W.'s allegations and then, on cross-examination, to explore the foundation for that witness' belief in the credibility, believability, or truthfulness of J.W.'s allegations"); *Sessums v. State, 129 S.W.3d 242, 248 (Tex. App.—Texarkana 2004, pet. ref'd)* ("[W]e find ourselves reviewing the activities of trial counsel in failing to object to clearly and unquestionably objectionable testimony of the most outrageous and destructive type. There is no conceivable strategy or tactic that would justify allowing this testimony in front of a jury."); *Miller v. State, 757*

*S.W.2d 880, 884 (Tex. App.—Dallas 1988, pet. ref'd)* ("In the present case, we can glean no sound trial strategy in defense counsel's failure to object to the extensive, inadmissible testimony concerning the only real issue at trial—complainant's credibility."); *Garcia v. State, 712 S.W.2d 249, 253 (Tex. App.—El Paso, pet. ref' d)* **[*11]** ("counsel should have made and persisted in valid objections to all of the testimony which permitted Detective Calanche and Yolanda Aguilar to pass upon the credibility of other witnesses").

However, after a review of the record, we do not agree with appellant's contention that defense counsel's performance was outrageous and lacked any possible strategic motive. McGinnis was an outcry witness who spoke to H.A. twice. During the first conversation, H.A. did not admit the abuse to McGinnis; instead, H.A. told McGinnis the pregnancy rumor was merely a misunderstanding with her friends. McGinnis admitted H.A. "was not forthcoming in telling me anything that was going on that was inappropriate." McGinnis did not believe an official report was necessary, although she informed H.A.'s mother about the conversation. The second conversation with H.A. occurred two days later when another rumor circulated that not only was H.A. pregnant, but H.A. thought the baby might be appellant's. McGinnis called H.A. back to her office, and this time, H.A. made her outcry. McGinnis then made her official report. The above questioning occurred in the context of the State asking McGinnis **[*12]** what made her believe H.A. enough to make an official report. During cross-examination, defense counsel asked McGinnis only a few questions.

Our review of the record indicates defense counsel's strategy in not objecting and conducting a limited cross-examination may have been for the purpose of avoiding emphasizing the matter before the jury. Also, McGinnis's testimony was in the context of her following up on the second rumor and her decision to make an official report. We conclude appellant has not satisfied his burden of proving there was no imaginable strategy for defense counsel's failure to object. Therefore, appellant has failed to rebut the strong presumption of effective assistance, and has not shown that counsel's conduct was so outrageous that no competent attorney would engage in it or that the outcome of the trial is unreliable due to counsel's errors.

### 3. The Mother's Testimony

The State also asked H.A.'s mother questions about H.A.'s truthfulness. *HN5* The credibility of a witness may be supported by evidence in the form of opinion, but the evidence may only refer to character for truthfulness and evidence of truthful character is admissible only after the character of the witness **[*13]** for truthfulness has been attacked. *Tex . R. Evid. 608*. Appellant argues he did not "open the door" by attacking H.A.'s credibility, so as to allow H.A.'s mother to provide her opinion on H.A.'s truthfulness. Appellant points to the following portions of H.A. 's mother's testimony:

Q: And has she, I guess, changed from her initial reaction of talking about what happened?

A: You mean — not really, no. You mean, like personality?

Q: Yes. I mean, is she still fearful and embarrassed when she talks about it?

A: No but we don't really talk about it all that much but I ask her questions and *she's very honest with her answer and she's not — she doesn't hide the answers. She tells me the truth.*

. . .

Q: You didn't think this could happen to your daughter?

A: Yes.

Q: Did you talk to [H.A.] about the fact that police were going to be involved and she was going to have to —

A: Yes.

Q: — follow through with that?

A: Yes.

Q: Did you talk to her about how serious this was?

A: Yes.

Q: *Did you ask [H.A.] if she was telling the truth?*

A: *Yes.*

Q: *And what did she say to you?*

A: *She said yes and she started crying.*

[Emphasis added.] Appellant's counsel did not object.

On appeal, appellant asserts that because defense counsel **[\*14]** did not attack H.A.'s character for truthfulness, it was improper for the State to elicit this testimony. And, even if H.A.'s character for truthfulness had been attacked, the mother's testimony was not proper rebuttal testimony. Therefore, defense counsel's failure to object constituted ineffective assistance of counsel. We disagree.

The mother's comments were brief and somewhat vague as to the content of what H.A. said that was "truthful." Our review of the record indicates defense counsel's strategy in not objecting may have been for the purpose of avoiding emphasizing the matter before the jury. We conclude appellant has not satisfied his burden of proving there was no imaginable strategy for defense counsel's failure to object. Therefore, appellant has failed to rebut the strong presumption of effective assistance, and has not shown that counsel's conduct was so outrageous that no competent attorney would engage in it or that the outcome of the trial is unreliable due to counsel's errors.

## CONCLUSION

We overrule appellant's remaining issues on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Chief Justice

Do not publish

Print this page

# Case # PD-0756-15

## Case Information

| | |
|---|---|
| Location | Court Of Criminal Appeals |
| Date Filed | 07/22/2015 09:46:31 PM |
| Case Number | PD-0756-15 |
| Case Description | |
| Assigned to Judge | |
| Attorney | |
| Firm Name | Individual |
| Filed By | Jorge Aristotelidis |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.00 |
| Total Court Case Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Grand Total | $0.00 |

## Payment

| | |
|---|---|
| Account Name | George W. Aristotelidis |
| Transaction Amount | $0.00 |
| Transaction Response | |
| Transaction ID | 10144980 |
| Order # | 006186759-0 |

## Petition for Discretionary Review

| | |
|---|---|
| Filing Type | EFileAndServe |
| Filing Code | Petition for Discretionary Review |
| Filing Description | Appellant's Petition for Discretionary Review with Appendix |
| Reference Number | |
| Comments | Please accept this second filing and disregard the first one filed on 7/22/2015 at 9:39:29 |
| Status | Rejected |

## Fees

| | |
|---|---|
| Court Fee | $0.00 |
| Service Fee | $0.00 |

## Rejection Information

| Rejection Reason | Time | Rejection Comment |
|---|---|---|

| Other | 07/24/2015 10:34:11 AM | This document is not allowing me to accept it. Please call me at (512) 936-1623. |
|---|---|---|

## Documents

| *Lead Document* | Petition for Discretionary Review - FINAL - Charles Lavoy Arrington.pdf | [Original] |
|---|---|---|
| *Attachments* | Arrington v. State_ 2015 Tex. App. LEXIS 2529-2.pdf | [Original] |

## eService Details

| Name/Email | Firm | Service Type | Status | Served | Date/Time Opened |
|---|---|---|---|---|---|
| Lauren Scott lscott@bexar.org | Bexar County District Attorneys Office | EServe | Sent | Yes | Not Opened |